IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN K. BARNER, )
        Plaintiff, ) C.A. No. 07-98
)
   v. ) District Judge McLaughlin
) Magistrate Judge Baxter
H.J. MARBERRY, et al., )
        Defendants. )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 24] be granted.

## II.    REPORT

### A.    Relevant Procedural History

Plaintiff Brian K. Barner, a prisoner formerly incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"),[1] brings this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 against Defendants H.J. Marberry, Warden at FCI-McKean ("Marberry"); Gerald Desio, Food Service Administrator at FCI-McKean ("Desio"); Jan Olowin, Supervisory Chaplain at FCI-McKean ("Olowin"); Kurt Stauffer, Assistant Food Service Administrator at FCI-McKean ("Stauffer"); and two unnamed Defendants identified as John Doe I and John Doe II. In his *pro se* complaint, Plaintiff alleges that Defendants' implementation of a Certified Religious Diet Pilot Program "den[ied] him an adequate Kosher/Halal diet" in violation of his First Amendment right to freedom of religion, Eighth Amendment right to be free from cruel and unusual punishment, and his rights under the

---

[1] Plaintiff is presently incarcerated at the Federal Correctional Institution at Allenwood in White Deer, Pennsylvania. (See Document # 34, Notice of Change of Address).

1

Religious Freedom Restoration Act ("RFRA"). (Document # 7, Complaint, at ¶ 24). Plaintiff seeks monetary damages, declaratory relief, and injunctive relief in the form of an order requiring Defendants "to restore the previously implemented 'Certified Meal Program' and cease the presently being used 'Common Fare Menu.'" (Id. at ¶¶ 27-29).[2]

On January 10, 2008, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment [Document # 24], arguing that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has filed a brief in opposition to Defendants' motion, essentially restating the allegations of his complaint. [Document # 32]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff is a member of the Jewish faith and strictly adheres to the laws and customs of his religion, which require him to eat only kosher prepared foods. Plaintiff was incarcerated at FCI-McKean from January 27, 2006, until approximately March 30, 2008. (See Document 1a attached to Document # 25, Defendants' Brief; Document # 34, Notice of Change of Address). At FCI-McKean, Plaintiff participated in the Certified Meal Program ("CMP"), which provided a religious diet that allowed Plaintiff to comply with his "firmly held religious beliefs." (Complaint at ¶ 10).

On January 12, 2007, FCI-McKean was approved by the Federal Bureau of Prisons' ("BOP") Assistant Director of Health Services to participate in the BOP's Certified Food Unitized Tray Pilot program ("Pilot Program"). (See Document 2a attached to Document # 25, Defendants' Brief). The primary purpose of the Pilot Program is to ensure that inmates receiving religious certified meals are served meals that do not violate their religious beliefs. (See Declaration of Edward J. Roberts ("Roberts"), BOP Regional Religious Services Administrator for the Northeast Region ("Roberts Declaration"), attached as Document 3 to

---

[2] Because Plaintiff has been transferred from FCI-McKean, his claims for declaratory and injunctive relief are moot.

2

Document # 25, Defendants' Brief, at ¶ 3). Under the Pilot Program, the BOP contracts with a non-BOP kosher vendor to prepare kosher food items that are fully prepared, sealed, and delivered to FCI-McKean, where they are re-heated and served to inmates approved to receive religious certified meals. (Id. at ¶ 4). Nothing cut, processed or prepared in FCI-McKean's food service department is offered on the certified food trays. (Id.). Because the kosher meals under the Pilot Program are prepared and sealed off-site, they do not contain fresh vegetables.

### C.     **Standards of Review**
#### 1.     **Motion to Dismiss**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).   The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).   The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v.

3

Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D. Discussion

#### 1. First Amendment Right to Free Exercise of Religion

Plaintiff claims that he "is not able to practice his preferred religious practice(s) of eating a Kosher diet because he is unable to receive adequate nutrition on the presently being served Unitized Tray Pilot Program." (Document # 32, Plaintiff's Response, at ¶ 56). In particular, Plaintiff complains that, under the Pilot Program, fresh vegetables were omitted from the kosher food trays, thus "forcing" him to obtain fresh vegetables from the non-kosher salad bar in violation of his religious beliefs. As a result, Plaintiff claims that Defendants violated his First Amendment right to freedom of religion.

5

Inmates have a constitutional right to receive a nutritious diet consistent with their religious beliefs. <u>Acoolla v. Angelone</u>, 2006 WL 938731 at * 10 (W.D.Va. 2006), <u>citing</u> <u>Ross v. Blackledge</u>, 477 F.2d 616, 618-19 (4th Cir. 1973); <u>See</u> <u>also</u> <u>Johnson v. Horn</u>, 150 F.3d 276, 283 (3d Cir. 1998)(holding that the First Amendment requires prison officials to provide inmates "with a diet sufficient to sustain them in good health without violating the kosher laws")(citations omitted). However, the right to practice one's religion while in prison is not absolute. See <u>O'Lone v Shabazz</u>, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). Under the First Amendment, regulations or policies that infringe upon a prisoner's rights to religious freedom must pass a reasonableness standard, rather than the usual strict scrutiny standard.[3] <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 89. Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08 (1989); <u>Turner</u>, 482 U.S. at 85.

The <u>Turner v. Safley</u> reasonableness test includes four factors for consideration:

> 1) whether there is a legitimate rational connection between the prison regulation and the governmental interest;
>
> 2) whether the prisoners have alternative means of exercising the constitutional right at hand;
>
> 3) the impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and

---

[3] Strict scrutiny is not required because courts need to "afford appropriate deference to prison officials" so that they may "anticipate security problems and adopt innovative solutions to the intractable problems of prison administration." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987) <u>quoting</u> <u>Turner v. Safley</u>, 482 U.S. at 89.

6

4) the availability of alternatives to the regulation.

482 U.S. at 89-90. See also Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999).[4]

### a. Application of Turner Factors

The first Turner factor considers the relationship between the policy and the penological interest. "A prison regulation fails this prong if it promotes an interest that is illegitimate or not neutral, or ... bears no valid, rational connection to the asserted interest." Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002). Under this prong, the court must "accord great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton v. Rasheed, 2003 WL 1354099, at * 11 (3d Cir. March 19, 2003) quoting O'Lone v. Shabazz, 482 U.S. 342, 353 (1987). This factor requires a two-fold analysis: "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." Id. quoting Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989). "The first factor is 'foremost in the sense that a rational connection is a threshold requirement - if the connection is arbitrary or irrational, the regulation fails, irrespective of whether the other factors tilt in its favor. But, ... we do not view it as subsuming the rest of the inquiry." Id. quoting Wolf v. Ashcroft, 297 F.3d 305, 310 (3d Cir. 2002).

Here, the first Turner factor clearly favors the Defendants. As stated by Edward J. Roberts ("Roberts"), Regional Religious Services Administrator for the BOP's Northeast Region, "[t]he primary purpose of [the Pilot Program] [was] to ensure that inmates incarcerated at FCI McKean, who [were] approved to receive religious certified meals [were] served meals that [did] not violate their religious tenets." (Roberts Declaration at ¶ 3). Roberts notes that,

---

[4] The Turner analysis "... assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections ... [O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." Id. See also Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) ("A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature..."). Defendants do not argue that Plaintiff's beliefs do not constitute a religion.

7

prior to the institution of the Pilot Program, FCI-McKean maintained a separate kosher kitchen from which kosher meals were prepared; however, "under the kosher kitchen program, errors were possible which could contaminate the kosher foods and thus violate an inmate's religious tenets. For instance, it was possible for utensils used to prepare non-kosher foods to be accidentally placed and used in the kosher kitchen,... [or a] non-kosher food such as beans or bread could accidentally be included on a kosher food tray." (Roberts Declaration at ¶ 5). Thus, FCI McKean's adoption of the Pilot Program was a means of ensuring that such errors would no longer occur and that the religious certified meals served to approved inmates met the strict standards of a kosher diet.

Moreover, the Pilot Program allowed FCI-McKean to comply with the strict kosher standards by the simplest means available - obtaining and serving fully prepared meals that were pre-packaged and sealed by a non-BOP kosher vender. The Third Circuit has recognized that a prison "has a legitimate penological interest in keeping its food service system as simple as possible." Johnson, 150 F.3d at 282, citing Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993)("the prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties"). Thus, the Court finds that a rational connection existed between FCI-McKean's institution of the Pilot Program and its legitimate interests in (i) ensuring that inmates approved to receive religious certified meals were served meals that did not violate their religious tenets, and (ii) doing so by utilizing the simplest means possible.

The second Turner factor "requires a court to assess whether inmates retain alternative means of exercising the circumscribed right." Fraise, 283 F.3d at 518 quoting Turner, 482 U.S. at 90. However, the analysis focuses specifically on whether Plaintiff "has alternative means of practicing his religion generally, not whether an inmate has alternative means of engaging in the particular practice in question." DeHart, 227 F.3d at 55 (emphasis added). In this regard, the Third Circuit has recognized that "the importance of alternative means of religious observance is an irrelevant consideration when the belief at issue is a 'religious commandment,' rather than a 'positive expression of belief.'" Johnson, 150 F.3d at 282, quoting Ward, 1 F.3d at 878 (discussing Jewish kosher laws). Here, as in Johnson and Ward, Plaintiff's claim is that he was

8

essentially made to defile himself under the laws of kosher because he was "forced" to eat non-kosher foods. "In such situations the centrality of the religious tenet carries greater weight and the existence of alternative means of observance is of no use in the ultimate balancing which Turner commands." Id. Accordingly, the second Turner factor is essentially neutral.

The final two factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." Sutton at * 15, quoting DeHart, 227 F.3d at 57. Here, Plaintiff is challenging the nutritional sufficiency of the kosher meals he was receiving at FCI-McKean, because he was not provided fresh vegetables; however, Plaintiff does not dispute that the meals he was being served under the Pilot Program were, in fact, kosher. (See Document # 11, Transcript of Proceedings Held on 5/22/07, at pp. 8, 17-18). Moreover, as Roberts notes in his declaration, a "detailed nutritional analysis of the religious certified food tray menu was conducted by a certified dietician and found to be nutritionally adequate." Because Plaintiff was already receiving a nutritious diet consistent with his religious beliefs under FCI-McKean's Pilot Program, there is no need for this Court to examine the availability and impact of providing alternative means to accommodate Plaintiff's request for a kosher diet providing fresh vegetables. As a result, the third and fourth Turner factors are not relevant in this case.

Based on the foregoing analysis of the four Turner factors, the Court finds that the religious certified meals served under the Pilot Program at FCI-McKean provided Plaintiff with a nutritionally adequate kosher diet consistent with his religious beliefs and, thus, did not violate Plaintiff's First Amendment right to free exercise of religion.

### 2. Religious Freedom Restoration Act

Under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden

results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).[5] Once a plaintiff establishes a prima facie case under RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1-2). Although the RFRA does not define the term "substantial burden," the Third Circuit has found within the context of the analogous Religious Land Use of Institutionalized Persons Act ("RLUIPA") that "a substantial burden exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

Here, Plaintiff has failed to submit sufficient evidence of a substantial burden on his religion. Significantly, Plaintiff does not complain that the religious certified meals at FCI-McKean failed to comply with his religious standards; rather, the focus of Plaintiff's complaint is that the religious meals did not include fresh vegetables. However, absent from Plaintiff's allegations is any claim that his religion requires him to eat fresh vegetables, and that the omission of fresh vegetables from his kosher diet was, thus, a substantial burden on his religious practice. In fact, Plaintiff acknowledges that "fresh vegetables are not actually listed in the Torah as a 'requirement.'" (Document # 32, Plaintiff's Response to Defendants' Motion, at ¶ 53). Instead, Plaintiff is essentially challenging the nutritional content of the kosher meals he was provided at FCI-McKean, alleging that "[t]he question for the jury will be whether or not the providing of a diet without any fresh vegetables is a violation of Plaintiff's right to an adequate diet." (Id. at ¶ 48). He then asserts that, in order to obtain the "required" fresh

---

[5] In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that the RFRA is unconstitutional as to state and local governments; however, Flores has not been interpreted to preclude RFRA claims against the federal government.

10

vegetables, he was "forced" to select foods from the non-kosher salad bar, in violation of his religion. Although requiring a prisoner to eat food forbidden by his religion's dietary regimen may "substantially burden" one's religious practice, see Norwood v. Strada, 2007 WL 2848036 at * 2 (M.D.Pa. Oct. 2, 2007), this Court gives no credence to Plaintiff's argument that he was "forced" by Defendants to violate his kosher diet to obtain the proper nutrition he allegedly required. As noted earlier, Defendants have submitted Roberts' Declaration confirming that a certified dietician found the religious certified food trays at FCI-McKean to be nutritionally adequate. (Roberts' Declaration at ¶ 4). Plaintiff has failed to provide any evidence to contradict this statement, other than his own contention that fresh vegetables are "part of a healthy and wholesome diet" and, thus, "a requirement for daily intake." (Id. at ¶¶ 48, 54). This is not sufficient to overcome a dietician's finding. Thus, Plaintiff's allegations are reduced to no more than an expression of his preference for fresh vegetables, which is not actionable under the RFRA.

### 3.     Eighth Amendment

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

In the context of this case, it is well settled that prisoners are entitled to a nutritionally adequate diet. <u>Laufgas v. Speziale</u>, 263 Fed. Appx. 192, 198 (3d Cir. 2008), <u>citing</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir. 1980). The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." <u>Ramos</u>, 639 F.2d at 571. Here, Plaintiff does not assert that his meals were prepared or served in a manner that jeopardized his health. Rather, the issue before the Court is whether the kosher meals that were provided to Plaintiff under the Pilot Program at FCI-McKean were nutritionally adequate. The record in this case establishes that they were. Simply stated, Plaintiff's perceived need and preference for fresh vegetables in his diet does not rise to the level of an Eighth Amendment violation, especially in light of the fact that the menus from the Pilot Program were reviewed and approved as nutritionally adequate by a certified dietician. Thus, Plaintiff's Eighth Amendment fails as a matter of law.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 24] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. <u>See, e.g.</u>, <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  June 30, 2008

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

12